**UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

DANIEL DERRELE MABIN,

       Petitioner,

v.                                                          Case No. 10-12903

GREG McQUIGGIN,

       Respondent.

_____/

**OPINION AND ORDER
DENYING THE PETITION FOR WRIT OF HABEAS CORPUS,
GRANTING IN PART A CERTIFICATE OF APPEALABILITY, AND
GRANTING LEAVE TO PROCEED *IN FORMA PAUPERIS* ON APPEAL**

Petitioner Daniel Derrele Mabin has filed a *pro se* petition for the writ of habeas

corpus pursuant to 28 U.S.C. § 2254.  Mabin, observed possessing and manipulating

an assault rifle by a pre-raid surveillance officer, was convicted of being a felon in

possession of a firearm and possession of a firearm during the commission of a felony

("felony firearm").  In his petition, Mabin alleges that: (1) the police failed to (a) preserve

potentially exculpatory fingerprint evidence and (b) disclose potentially exculpatory

identification evidence; (2) the trial court deprived him of his constitutional rights by

admitting evidence of other crimes, wrongs, or acts; (3) the prosecutor engaged in

misconduct; (4) the trial court abused its discretion by rejecting an offered stipulation to

establish Petitioner's prior convictions without detailing them—an "*Old Chief*" issue; (5)

the jury's verdict was against the great weight of the evidence, and the evidence was

insufficient to sustain Petitioner's convictions; (6) the trial court failed to consider

mitigating evidence at sentencing; and (7) the trial court misapplied state law and deprived Petitioner of his constitutional rights at sentencing.

 The State argues that Petitioner's first and third claims and part of his second claim are procedurally defaulted because Petitioner failed to object in the trial court. The State argues that the remaining habeas claims lack merit.

 A procedural default is "a critical failure to comply with state procedural law." *Trest v. Cain*, 522 U.S. 87, 89 (1997). While it is true that the Michigan Court of Appeals reviewed some of Petitioner's claims for "plain error" because he failed to raise the issues in the trial court, the presence of a procedural default does not deprive a federal court of jurisdiction. *Id.* A prisoner may obtain relief on a procedurally-defaulted claim if he "demonstrate[s] cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate[s] that failure to consider the claims will result in a fundamental miscarriage of justice." *Coleman v. Thompson*, 501 U.S. 722, 750 (1991). The petitioner "must also show that the claims are meritorious." *Babick v. Berghuis*, 620 F.3d 571, 576 (6th Cir. 2010). As in *Babick v. Berghuis*, the court "cut[s] to the merits here, since the cause-and-prejudice analysis adds nothing but complexity to the case." *Id.*

 The court will deny the petition but permit a further exploration of the *Old Chief* issue on appeal at Petitioner's election.

# I. BACKGROUND

## A. The Charges and Trial Testimony

Petitioner was charged in Oakland County, Michigan with felon in possession of a

firearm, Mich. Comp. Laws § 750.224f, and felony firearm, Mich. Comp. Laws

§ 750.227b.  The charges arose from

> the pre-raid surveillance of a Pontiac residence known for drug activity.
> While conducting surveillance of the home located at 17 Henderson, Pontiac
> Police Officer Daniel Main saw a Grand Am pull into the driveway and
> observed the driver get out of the vehicle and walk across the street to a
> party store, where he talked with Mabin in front of the store.  Mabin then
> walked across the street and stood on the front porch of the home for a few
> minutes before retrieving an assault rifle from the passenger side of the
> Grand Am.  He pointed the rifle in the air and at the house and then placed
> the weapon back inside the car.  Mabin then walked back across the street
> but left the area when a police raid van approached.  The police conducted
> a drug raid of the Henderson residence as well as a nearby apartment
> located at 125 Mary Day, where the police found Mabin.

*People v. Mabin*, No. 286269, 2009 WL 3491617, at *1 (Mich. Ct. App. Oct. 29, 2009).

Petitioner was tried in Oakland County Circuit Court where the following additional facts

were established.

### 1.  Testimony of Officer Daniel Main

Pontiac Police Officer Daniel Main explained to the jury that, on December 11,

2007, he obtained search warrants for 17 Henderson Street and for 125 Mary Day

Street, Apartment C, in Pontiac.  Petitioner was the target of both search warrants.

Officer Main conducted a surveillance of the Henderson Street address the evening of

December 11, 2007.  At approximately 7:30 p.m., he observed Petitioner remove a rifle

from a Grand Am parked there.  Petitioner pointed the rifle in the air and at the house

and then placed the rifle back in the car.  Petitioner walked past Officer Main and out of

Main's sight before the raid van arrived.

4

The officers were unable to locate Petitioner in the neighborhood and proceeded to execute the search warrant at the Mary Day apartment where they found Petitioner. He was wearing the same black tee shirt that Main had seen him wearing at the Henderson Street address.  The tan, hooded sweatshirt that Petitioner had been wearing over the tee shirt was hanging inside the apartment.  It had been raining that night, and the sweatshirt was wet.

On top of a dresser in the apartment, the officers found a cell phone and a set of keys, which included a key for the apartment.  Whenever Officer Main answered the cell phone, the caller asked for "Mook," which was Petitioner's street name.  The officers also found some miscellaneous pills, loose baggies (a common way to package narcotics), a digital scale (which was indicative of narcotics sales), and a selective service questionnaire addressed to Petitioner at 17 Henderson Street.  Inside a dresser drawer were a box of ammunition and loose rounds of ammunition, all of which could have been used in the rifle that Officer Main saw Petitioner handle on Henderson Street. The rifle itself was recovered from the front seat of the Grand Am at 17 Henderson Street.

### 2.  Testimony of Officer Ryan Roberts

Police Officer Ryan Roberts testified that, after Officer Main concluded his surveillance at 17 Henderson Street, Officer Roberts and several other officers executed search warrants at the residence.  They discharged flash bangs (devices that emit a loud sound and a burst of bright light) outside the residence.  As some of the officers secured the Henderson Street address, Officer Roberts and a few other officers went to 125 Mary Day Street, which was three to five blocks away from 17 Henderson

5

Street.  They found Petitioner and a female companion at the Mary Day apartment.

Petitioner initially tried to run to the back of the apartment, and after he was detained,

he claimed that he was "scared" as he had heard the police raiding a house on

Henderson Street.

### 3.  Testimony of Connesha Harris

Petitioner presented Connesha Harris and her brother, David Harris, in his

defense, but did not testify.  Connesha testified that she and four other adults, along

with nine children, were present at 17 Henderson Street on December 11, 2007, when

police raided her house.  At approximately 6:30 p.m. that night, she had observed a

green Grand Am arrive at the house.  The driver was a man named Stephan.  She did

not see Petitioner outside her home between 6:30 p.m. and 8:00 p.m. that night.  The

police officers arrested only her brother, David.

### 4.  Testimony of David Harris

David Harris testified that he was sitting or standing on the porch at 17

Henderson Street on December 11, 2007, at approximately 6:30 p.m., and saw a green

Grand Am pull into the driveway.  He walked into the house and informed his sister that

Stephan was there.  By the time he walked back outside, Stephan was talking to

someone across the street.  When a blue truck arrived—the police raid van—and threw

flash bombs into the yard, Stephan and the other man, who was not in the courtroom,

were walking up the street.

The police took Harris to a house on Mary Day and then to the police station

where he saw a paper charging him with felony firearm.  The police never formally

charged him with felony firearm; instead, he was released after he agreed to provide the police with three names.

Harris denied being Petitioner's friend or having any type of relationship with Petitioner. But he acknowledged that he was on parole, that he had an outstanding warrant for absconding from parole, and that he could get into trouble if he admitted to associating with a known felon.

### 5. Rebuttal Testimony

Officer Main testified on rebuttal that David Harris had agreed to be an informant and that he was not charged with felony firearm. Officer Main also testified that the Grand Am was present in front of 17 Henderson Street for about thirty minutes before Harris came out of the house and that no one was on the porch when Petitioner handled the gun at that address.

### 6. The Defense Theory

Defense counsel stated during closing arguments that the case was a credibility contest between the officer who supposedly saw Petitioner with the gun and the other witnesses who said that Petitioner was not in the area at the time. Counsel claimed that reasonable doubt existed because: there was no fingerprint evidence to substantiate the officer's testimony; there was no proof that Petitioner resided at 125 Mary Day where ammunition matching the rifle was found; it was dark and raining on the night in question and Officer Main informed the other officers that the suspect "looked to be" Daniel Mabin; Petitioner was not the owner of the Grand Am and did not possess keys to the Grand Am at his arrest; and David Harris was charged with the same offense and released only after he agreed to cooperate.

### B.  The Verdict, Sentence, and Appeal

The jury rejected the defense theory and on May 2, 2008, found Petitioner guilty of felon in possession of a firearm and felony firearm.  The trial court sentenced Petitioner as a repeat offender to imprisonment for two to seven and one-half years for the felon-in-possession conviction and to a consecutive term of five years for the felony firearm conviction.

Petitioner appealed as of right.  Two judges of the three-judge panel who decided his appeal voted to affirm his convictions and sentence.  *See People v. Mabin*, No. 286269, 2009 WL 3491617 (Mich. Ct. App. Oct. 29, 2009).  All three judges agreed that the trial court erred in rejecting Petitioner's request to prohibit any mention of the nature of his prior convictions.  The majority found the error harmless, but one voted to reverse Petitioner's convictions and to remand for a new trial on the ground that the trial court's error was not harmless.

Petitioner raised the same claims in the Michigan Supreme Court.  On May 6, 2010, the state supreme court denied leave to appeal because it was not persuaded to review the issues.  *See People v. Mabin*, 781 N.W.2d 104 (Mich. 2010) (table).  On July 23, 2010, Petitioner filed his habeas corpus petition.

### II.  STANDARD OF REVIEW

"The statutory authority of federal courts to issue habeas corpus relief for persons in state custody is provided by 28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA)."  *Harrington v. Richter*, __ U.S. __, 131 S. Ct. 770, 783 (2011).  Pursuant to § 2254, state prisoners are not

8

entitled to the writ of habeas corpus unless the state court's adjudication of their claims

on the merits

> (1)    resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2)    resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

> Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts.  Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

*Williams v. Taylor*, 529 U.S. 362, 412-13 (2000).

"A state court's determination that a claim lacks merit precludes federal habeas

relief so long as 'fairminded jurists could disagree' on the correctness of the state

court's decision."  *Harrington*, 131 S. Ct. at 786 (quoting *Yarborough v. Alvarado*, 541

U.S. 652, 664 (2004)).  "[E]ven a strong case for relief does not mean the state court's

contrary conclusion was unreasonable."  *Id.* (citing *Lockyer v. Andrade*, 538 U.S. 63, 75

(2003)).  To obtain a writ of habeas corpus from a federal court, a state prisoner must

show that the state court's ruling on his claim "was so lacking in justification that there

was an error well understood and comprehended in existing law beyond any possibility

for fairminded disagreement."  *Id.* at 786-87.

### III.  DISCUSSION

9

## A.  Failure to Preserve and Disclose Evidence

### 1.  Fingerprint Evidence

Petitioner alleges that the police failed to preserve potentially exculpatory fingerprint evidence on the rifle that he was accused of handling.  The Michigan Court of Appeals reviewed this issue for "plain error affecting [Petitioner's] substantial rights" because Petitioner did not preserve the claim for appellate review by raising it in the trial court.  The Court of Appeals determined that Petitioner failed to establish plain error because "the police did not act in bad faith by failing to preserve the rifle for fingerprint testing" and because "the evidence tended to show that such testing would not have been exculpatory."  *Mabin*, 2009 WL 3491617, at *2.

The Supreme Court stated in *Arizona v. Youngbood* that

> [t]he Due Process Clause of the Fourteenth Amendment . . . makes the good or bad faith of the State irrelevant when the State fails to disclose to the defendant material exculpatory evidence.  But . . . the Due Process Clause requires a different result when [courts] deal with the failure of the State to preserve evidentiary material of which no more can be said than that it could have been subjected to tests, the results of which might have exonerated the defendant.

488 U.S. 51, 57 (1988).  The failure to preserve potentially useful evidence does not violate due process of law "unless a criminal defendant can show bad faith on the part of the police."  *Id.* at 58.

Petitioner alleges that the police failed to follow basic protocol for preserving fingerprints on the rifle in evidence at his trial.  He claims that, if his fingerprints were not found on the rifle, the jury may have concluded that reasonable doubt existed.

Police Officer Daniel Main admitted at trial that the rifle retrieved from the car in front of 17 Henderson Street was not preserved for fingerprints and that the police did

10

not follow proper protocol in handling the gun.  The officers were not wearing gloves and apparently made no effort to touch the gun in a place where it would not normally be handled.  Nor was it stored in a breathable brown paper bag so as to preserve the evidence and avoid having any fingerprints rub off.  (Trial Tr. Vol. II, 182-84, May 2, 2008.)

Explaining the officers' failure to follow proper protocol, Officer Main testified that there was no need to analyze the rifle for fingerprints because he actually saw Petitioner handling it.  In his opinion, evidence is analyzed for fingerprints only when there exists some doubt about who may have touched the item.  (*Id.* at 162-63, 184; Trial Tr. Vol. I, 132-33, May 1, 2008.)

Petitioner has failed to show that the prosecution acted in bad faith when it failed to preserve the rifle for fingerprint analysis.  Instead, it appears that the officers were either negligent in the way they handled the rifle or that they believed it was unnecessary to analyze the rifle for fingerprints because an eyewitness officer observed Petitioner handle the gun.  Petitioner, therefore, has no right to relief on the basis of the alleged failure to preserve fingerprint evidence.

### 2.  The Supposed Arrest of David Harris

Petitioner alleges that the police failed to disclose potentially exculpatory evidence that they arrested David Harris for possessing the rifle that Petitioner was charged with possessing.  Petitioner did not raise this issue in state court.[1]  As a result,

---

[1] Although he argued in his state appellate brief that the prosecution failed to disclose exculpatory identification evidence, the underlying basis for the claim was that the prosecution offered no evidence about the type of pills discovered by the police at the Mary Day apartment.  He did not mention the alleged failure to disclose evidence

there is no state court decision to which the court must defer.  Even though habeas petitioners generally must exhaust state remedies before raising their claims in federal court, 28 U.S.C. § 2254(b)(1), the exhaustion requirement is not a jurisdictional limitation.  *Pudelski v. Wilson*, 576 F.3d 595, 606 (6th Cir. 2009) (citing *Cain v. Redman*, 947 F.2d 817, 820 (6th Cir. 1991)).  "An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State."  28 U.S.C. § 2254(b)(2).  Petitioner's claim lacks merit for the reasons that follow.  The court therefore elects to overlook the failure to exhaust state remedies for his claim.

On the merits, the court is guided by the Supreme Court's decision in *Brady v. Maryland*, 373 U.S. 83 (1963), as clearly established federal law on the failure to disclose evidence.  In *Brady*, the Supreme Court stated that "suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution."  *Id.* at 87.  *Brady* applies to situations involving "the discovery, after trial of information which had been known to the prosecution but unknown to the defense."  *United States v. Agurs*, 427 U.S. 97, 103 (1976).

Petitioner alleges that the police failed to disclose that they arrested David Harris for possessing the rifle in evidence, but Officer Main testified that, although Harris was taken to the police station, he was not arrested for possessing the gun.  (Trial Tr. Vol. II, 177-81, May 2, 2008.)  And even though Harris subsequently testified that he saw his

---

about Harris's arrest.

12

name and the words "felony firearm" on a paper at the police station, he admitted that
he was never formally charged with the offense.  (*Id.* at 209.)  While it is true that an
officer unfamiliar with the investigation asked Harris if he was "Mook" (Petitioner's street
name), Officer Main testified that he knew Harris was not Petitioner.  (*Id.* at 178-79.)
The record, therefore, does not support Petitioner's claim that Harris was arrested for
possession of the rifle in evidence and that the police failed to disclose this information.

  To the extent that Harris's detention by the police and questioning at the police
station constitutes exculpatory evidence, Petitioner is not entitled to relief because he
was aware of this information before trial.  Defense counsel named Harris as a witness
during *voir dire*, (Trial Tr. Vol. I, 13, May 1, 2008), and Harris subsequently testified
about being taken into custody.  Even if all the details of Harris's detention and
cooperation with the police were not revealed until trial, "'*Brady* generally does not apply
to delayed disclosure of exculpatory information, but only to complete failure to
disclose.'"  *O'Hara v. Brigano*, 499 F.3d 492, 502 (6th Cir. 2007) (quoting *United States
v. Bencs*, 28 F.3d 555, 560 (6th Cir. 1994)).  For all of these reasons, the record does
not support Petitioner's allegation that the police failed to disclose exculpatory evidence.

### B.  "Other Acts" Evidence

  Petitioner alleges next that the trial court deprived him of his constitutional rights
by admitting evidence of drug trafficking.  The evidence consisted of baggies,
ammunition, pills, and a digital scale, all of which the police found at the Mary Day
apartment.  Petitioner claims that these items were not relevant to the charges against
him and that there was no link between the ammunition and the rifle which the suspect

13

handled at 17 Henderson Street.  He argues that the evidence enabled the jury to reach a verdict on the basis of improper inferences.

The Michigan Court of Appeals held that the evidence of alleged drug trafficking was admissible under the *res gestae* exception to Michigan Rule of Evidence 404(b), which governs the admission of evidence regarding "other crimes, wrongs, or acts." Under the *res gestae* exception to the rule, evidence of an antecedent event, which involved the commission of another crime, is admissible if it is connected to the charged offense and its admission is necessary for the jury to hear the "complete story." *People v. Sholl*, 556 N.W.2d 851, 857 (Mich. 1996) (quoting *People v. Delgado*, 273 N.W.2d 395, 397 (Mich. 1978)).  The Michigan Court of Appeals determined that the trial court properly admitted evidence of Petitioner's alleged drug trafficking because the evidence explained "why the police were investigating him and why they executed drug raids on two residences with which he was associated." *Mabin*, 2009 WL 3491617, at *3.

The state court's alleged violation of the Michigan Rules of Evidence is not a cognizable claim on federal habeas corpus review, *Hall v. Vasbinder*, 563 F.3d 222, 239 (6th Cir. 2009), because "a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." *Estelle v. McGuire*, 502 U.S. 62, 68 (1991).  "[A] state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus." *Bradshaw v. Richey*, 546 U.S. 74, 76 (2005).  Moreover,

> [t]here is no clearly established Supreme Court precedent which holds that a state violates due process by permitting propensity evidence in the form of other bad [sic] acts evidence . . . .  While the Supreme Court has addressed whether prior acts testimony is permissible under the Federal Rules of Evidence, it has not explicitly addressed the issue in constitutional terms.

14

*Bugh v. Mitchell*, 329 F.3d 496, 512-13 (6th Cir. 2003) (citations omitted).

Consequently, there is no Supreme Court precedent to which the state court's decision

is contrary.  Petitioner's disagreement with the state court's ruling on "other acts"

evidence involves no constitutional dimension and is not cognizable on federal habeas

review.  *Bey v. Bagley*, 500 F.3d 514, 523 (6th Cir. 2007).

Even if the claim were cognizable and the trial court deprived Petitioner of due

process by admitting the disputed evidence, habeas petitioners generally "are not

entitled to relief based on a constitutional error at trial unless they can establish that it

resulted in actual prejudice.  Actual prejudice is present when the error had substantial

and injurious effect or influence in determining the jury's verdict."  *Gover v. Perry*, 698

F.3d 295, 299 (6th Cir. 2012) (citations omitted).

Officer Main testified that there was "some indicia of sales" in the Mary Day

apartment, but "nothing major" and no narcotics.  (Trial Tr. Vol. I, 126, May 1, 2008;

Trial Tr. Vol. II, 148, May 2, 2008.)  Given this testimony, evidence that baggies,

miscellaneous pills, a digital scale, and ammunition were found at the Mary Day

apartment likely did not have a substantial and injurious effect or influence on the jury's

verdict.  It is far more plausible that the jury was simply persuaded by the strength of

Officer Main's testimony regarding his surveillance of Petitioner at 17 Henderson Street.

The admission of such evidence—if error—was harmless.  Petitioner therefore

has no right to relief on the basis of his argument about the admission of "other acts"

evidence.

### C.  The Prosecutor's Actions

15

The third habeas claim alleges prosecutorial misconduct. The heading for Petitioner's claim states that the prosecutor made an improper closing argument by referring to facts not in evidence and by vouching for witnesses. But the substance of the claim is that the prosecutor inferred that Petitioner was a drug dealer and that he resided at the Mary Day apartment where ammunition and drug paraphernalia were found. According to Petitioner, there was no evidence to support the inferences, and the prosecutor should not have been permitted to assert a drug trafficking theory.

"Claims of prosecutorial misconduct are reviewed deferentially on habeas review." *Millender v. Adams*, 376 F.3d 520, 528 (6th Cir. 2004). To prevail on his claim, Petitioner must demonstrate that the prosecutor's conduct infected his trial with such unfairness as to make the resulting conviction a denial of due process. *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974). The misconduct must have been so egregious that it rendered the entire trial fundamentally unfair. *Cook v. Bordenkircher*, 602 F.2d 117, 119 (6th Cir. 1979). Federal courts in this Circuit

> apply a two-part test to determine whether the state court reasonably applied the federal standard in holding that prosecutorial misconduct did not render the petitioner's trial fundamentally unfair. Courts first determine whether the prosecution's conduct was improper. Second, courts determine whether that improper conduct was flagrant by considering four factors: (1) whether the evidence against the defendant was strong; (2) whether the conduct of the prosecution tended to mislead the jury or prejudice the defendant; (3) whether the conduct or remarks were isolated or extensive; and (4) whether the remarks were made deliberately or accidentally.

*Wogenstahl v. Mitchell*, 668 F.3d 307, 328 (6th Cir. 2012) (citations and alterations omitted).

## 1.  Drug Dealing

Petitioner alleges that the prosecutor appealed to the jurors' fears and prejudices by deliberately portraying him in a false light as a drug dealer. The Michigan Court of Appeals analyzed this claim for "plain error" because Petitioner failed to object to the prosecutor's conduct at trial. The Court of Appeals then determined that Petitioner had failed to establish "plain error" regarding the prosecutor's remarks about Petitioner dealing drugs.

Prosecutors may not incite the passions and prejudices of the jury by calling on the jury's emotions and fears, rather than the evidence, to decide the case. *Johnson v. Bell*, 525 F.3d 466, 484 (6th Cir. 2008). Petitioner, however, is challenging the prosecutor's question to Officer Main about whether the area near 17 Henderson Street was a high drug area. The prosecutor also asked Officer Main whether he found any heroin or cocaine at the Mary Day residence and, if not, whether Petitioner would have had an opportunity to get rid of the drugs before the police arrived. (Trial Tr. Vol. I, 100-01, 126, May 1, 2008.)

Both questions were proper because Officer Main's testimony about drug trafficking established a context and a rationale for Officer Main's pre-raid surveillance that put him in a position to see Petitioner's possession of the rifle. Even if the questions were improper, Officer Main testified that Petitioner was not involved in any of the suspected drug transactions that he observed during his surveillance and that he did not find any heroin or cocaine at the Mary Day residence. (*Id.* at 101, 126.) Thus, the prosecutor's questions, balanced as they were by the officer's answers, did not likely mislead the jury nor prejudice Petitioner, particularly where there was eyewitness

17

testimony that Petitioner possessed a rifle at the Henderson address.  The prosecutor's conduct was not flagrant even assuming it was improper.

### 2.  The Mary Day Apartment

Petitioner alleges that the prosecutor also improperly implied that Petitioner resided at the Mary Day apartment and that the illicit property which the police found there was his property.  The Michigan Court of Appeals disagreed and concluded that the evidence and reasonable inferences therefrom supported the prosecutor's argument.

Prosecutors may not misrepresent the facts or assert facts that were never admitted into evidence, *Washington v. Hofbauer*, 228 F.3d 689, 700 (6th Cir. 2000), but they "may argue reasonable inferences from the evidence," *Amos v. Renico*, 683 F.3d 720, 730 (6th Cir. 2012) (citing *United States v. Crosgrove*, 637 F.3d 646, 663 (6th Cir. 2011)).  Here, the evidence supported the prosecutor's inference that Petitioner lived at the Mary Day apartment, but used 17 Henderson Street as his "official" address:

> Mabin used the Henderson address for purposes of his parole, and representatives from the parole office coincidentally appeared at the Henderson residence on the night of the raid.  In addition, in the Mary Day apartment, the police recovered an envelope addressed to Mabin using the Henderson address.  The envelope was found in the drawer of a dresser that also contained rounds of ammunition suitable for use with the rifle that Officer Main observed Mabin holding outside the Henderson residence.  Also inside the dresser, Officer Main recovered baggies commonly used for packaging narcotics and a digital scale commonly used in narcotics sales.  Further, the police found Mabin's keys and cell phone on top of the dresser.  The key ring held a key that unlocked the door to the apartment.  A tan sweatshirt that Officer Main observed Mabin wearing while he was holding the rifle was hanging near the apartment door.

*Mabin*, 2009 WL 3491617, at *4.

18

For the reasons given by the Michigan Court of Appeals in the preceding paragraph, the prosecutor's inferences were reasonable, and his conduct did not deprive Petitioner of due process.  Therefore, the state court's rejection of Petitioner's prosecutorial misconduct claim was not contrary to, or an unreasonable application of, Supreme Court precedent.

### D.  Rejection of a Stipulation

Petitioner claims that the trial court abused its discretion by rejecting his offer to stipulate to the fact that he was previously convicted of a felony and was ineligible to possess a firearm.  He offered to stipulate that he had a prior conviction to avoid having the jury learn that he was previously convicted of armed robbery and assault with intent to commit murder.  The prosecutor refused to stipulate to the prior convictions, and the trial court rejected the stipulation without giving a reason.  (Trial Tr. Vol. 1, 5-6, May 1, 2008).

Petitioner contends, like the one dissenting Michigan Court of Appeals judge, that the nature of his prior convictions was no more relevant to the charges against him, and had no greater probative value, than the fact that he had an unnamed, prior felony conviction.  He further contends that, given the nature of the charges against him, the jury could not but be affected by knowledge of his prior convictions for armed robbery and assault with intent to commit murder.

The majority of the Michigan Court of Appeals agreed with Petitioner that the trial court erred in rejecting the stipulation.  The majority nevertheless held that reversal was not warranted because the error was not outcome-determinative.  The Court of Appeals stated that the evidence overwhelmingly established Petitioner's guilt and that the jurors

19

were presumed to follow the trial court's cautionary jury instruction about the proper use of evidence regarding Petitioner's previous convictions.

### 1.  Legal Framework and Application

A court can abuse its discretion by rejecting a defendant's offer to concede to the fact of a prior felony conviction and by admitting a record of the prior conviction.  An abuse of discretion occurs "when the name or nature of the prior offense raises the risk of a verdict tainted by improper considerations, and when the purpose of the evidence is solely to prove the element of prior conviction."  *Old Chief v. United States*, 519 U.S. 172, 174 (1997).  This ruling in *Old Chief* interpreted Federal Rule of Evidence 403, which is identical to Michigan Rule of Evidence 403.  *People v. Swint*, 572 N.W.2d 666, 677 (Mich. Ct. App. 1997).  Accordingly, Michigan courts adopted the *Old Chief* ruling upon finding it persuasive, *see, e.g.*, *id.* at 678, and the Michigan Court of Appeals applied *Old Chief* in considering Petitioner's appeal, *Mabin*, 2009 WL 3491617, at *5-6.

The nature of Petitioner's prior convictions was mentioned several times at trial. As the dissent in the Michigan Court of Appeals explained:

> They were referenced in the trial court's reading of the information at the outset of jury selection, during the prosecutor's opening statement, during the arresting officer's testimony, and in the prosecutor's closing argument.  A certified copy of defendant's conviction record for these two offense[s] was admitted into evidence and the trial court's final instructions to the jury advised them that one of the elements they must find to convict defendant of felon in possession is "defendant was convicted of armed robbery and/or assault with intent to murder."

*Mabin*, 2009 WL 3491617, at *9 (Shapiro, J., dissenting).  Furthermore, the prosecutor gave no particular reason for specifying the prior convictions, and the trial court gave no reason for its denial of Petitioner's request to not specify the prior convictions.

20

The trial court rejected Petitioner's stipulation despite the risk of a verdict tainted by improper considerations. The court agrees with the Michigan Court of Appeals that the state trial court erred by refusing to accept Petitioner's stipulation.

### 2. Harmless Error Analysis

Despite the error, a court's failure to comply with *Old Chief* is subject to harmless error analysis. *United States v. Daniel,* 134 F.3d 1259, 1262-63 (6th Cir. 1998). A federal habeas court reviews a state court's "harmless error" analysis under *Brecht v. Abrahamson*, 507 U.S. 619, 629 (1993). *Jones v. Bagley*, 696 F.3d 475, 485 (6th Cir. 2012) (citing *Jaradat v. Williams*, 591 F.3d 863, 869 (6th Cir. 2010)).

> Under the *Brecht* standard, an error requires reversal only if it had substantial and injurious effect or influence in determining the jury's verdict. If a judge is in *grave doubt* about whether or not that error is harmless, the uncertain judge should treat the error as if it had a substantial and injurious effect or influence in determining the jury's verdict.

*Gover v. Perry*, 698 F.3d 295, 302 (6th Cir. 2012) (citations and alteration omitted).

Officer Main testified at trial that he knew what Petitioner looked like before he began his surveillance on December 11, 2007. He recognized Petitioner on December 11, 2007, and described in detail the way in which he saw Petitioner possess and handle the rifle that was in the Grand Am. Petitioner removed the rifle from the car and played with it, pointing it in the air and at the house, momentarily hid it from view when a vehicle passed on the street, and eventually returned it to the Grand Am. (Trial Tr. Vol. II, 185-86, May 2, 2008.) The evidence against Petitioner from Officer Main was unwavering and positive. Unless the jury were to conclude that this police officer was simply making it up, committing rank perjury to convict Petitioner, or was honestly but grossly mistaken about what he said he saw—these possibilities being outliers in the

21

realm of all possible explanations—the evidence is fairly characterized as overwhelming in favor of guilt.

"[J]uries are presumed to follow their instructions." *Richardson v. Marsh*, 481 U.S. 200, 211 (1987). Here, the trial court charged the jury to use evidence of other acts, for which Petitioner was not on trial, for the sole purpose of deciding whether it showed that Petitioner was ineligible to possess a firearm. The trial court warned the jurors not to conclude from the evidence that Petitioner was a "bad" person or likely to commit crimes. The court also stated that the jurors must not convict Petitioner because they thought he was guilty of other illegal conduct. (Trial Tr. Vol. II, 272-73, May 2, 2008.)

As noted above, the evidence against Petitioner was overwhelming. This court does not entertain any grave doubts about whether the trial court's error had a substantial and injurious effect or influence on the jury's verdict. The state appellate court's conclusion that the error was harmless was objectively reasonable.

### E. The Weight and Sufficiency of the Evidence

The fifth habeas claim alleges that the jury's verdict was against the great weight of the evidence and that the evidence was insufficient to sustain Petitioner's convictions. The Michigan Court of Appeals reviewed this claim for "plain error" because Petitioner did not raise it in a motion for new trial. The Court of Appeals went on to conclude that Petitioner's challenges to the verdict and the sufficiency of the evidence lacked merit.

### 1. Legal Framework

The contention that the conviction was against the weight of the evidence is a state-law argument, and a federal habeas court may only review issues of federal law.

22

*Nash v. Eberlin*, 258 F. App'x 761, 764 n.4 (6th Cir. 2007).  But Petitioner also asserts

that the evidence was insufficient to support his convictions.  The Supreme Court held

in *Jackson v. Virginia*, 443 U.S. 307 (1979),

> that a conviction with insufficient evidence violates the defendant's federal
> due process rights.  To determine whether sufficient evidence supports a
> particular conviction, the relevant question is whether, after viewing the
> evidence in the light most favorable to the prosecution, any rational trier of
> fact could have found the essential elements of the crime beyond a
> reasonable doubt.

*White v. Steele*, 602 F.3d 707, 709 (6th Cir. 2009) (citations omitted).

The *Jackson* standard "must be applied with explicit reference to the substantive

elements of the criminal offense as defined by state law."  *Jackson v. Virginia*, 443 U.S.

at 324 n.16.  In Michigan, a defendant commits felony firearm when he "possessed a

firearm during the commission of, or the attempt to commit, a felony."  *People v.*

*Johnson*, 808 N.W.2d 815, 818 (Mich. Ct. App. 2011).  "Possession can be proved by

circumstantial or direct evidence and is a factual question for the trier of fact."

*Id.*

> The felon-in-possession statute, Mich. Comp. Laws § 750.224f, generally
>
> prohibits a person convicted of a felony from possessing a firearm if fewer
> than three years have passed since the person paid all fines, served all terms
> of imprisonment, and successfully completed all terms of probation or parole
> imposed for the violation.  But a longer, and potentially indefinite, prohibition
> applies when a person has been convicted of a "specified felony."

*People v. Perkins*, 686 N.W.2d 237, 239 (Mich. Ct. App. 2004) (citing Mich. Comp. Laws

§ 750.224f(1-2); *People v. Parker*, 584 N.W.2d 753 (Mich. Ct. App. 1998)).  A "specified

felony," for purposes of § 750.224f(2), includes a felony that entails "the use, attempted

use, or threatened use of physical force against the person or property of another, or

23

that by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense." Mich. Comp. Laws § 750.224f(6)(i).

## 2. Application

Petitioner had prior convictions for armed robbery and assault with intent to commit murder. Both of those convictions were "specified felonies" for purposes of § 750.224f(2) because both crimes, by their nature, involved a substantial risk that physical force would be used during the commission of the offense.

Furthermore, Petitioner did not dispute that he was ineligible to possess a firearm, and Officer Main testified that he saw Petitioner in possession of a firearm. The evidence, therefore, was sufficient to support Petitioner's conviction for felon in possession of a firearm, and because he was committing that felony offense while he possessed a firearm, there was sufficient evidence to support the conviction for felony firearm.

Petitioner nevertheless argues that the police may have misidentified him and confused him with David Harris who was taken into custody before he was arrested. Petitioner interprets Officer Main's police report, which stated that the suspect "looked to be Mabin," as an indication that Officer Main was uncertain about the suspect's identity.

Petitioner also points out that he was discovered at the Mary Day apartment, which was several blocks away from 17 Henderson Street where the suspect was observed holding the weapon. Petitioner contends that he did not fit the description of the suspect because he was linked to a Jeep Cherokee and not the Grand Am where the rifle was confiscated. Additionally, the police discovered him with a female

24

companion, whereas the suspect was seen walking away from the Henderson

residence with a male companion.  Finally, Petitioner asserts that the prosecution never

proved that the ammunition found at the Mary Day apartment where he was arrested

belonged to the rifle which the suspect was holding.

The Michigan Court of Appeals determined that the evidence overwhelmingly

established Petitioner's guilt for the following reasons:

> Officer Main testified that he saw Mabin retrieve the rifle from the Grand Am and point it in the air and toward the Henderson residence before returning it to the car.  Officer Main was positive that Mabin was the person holding the weapon, recognized him from previous investigatory work, and had previously seen him at both the Henderson and Mary Day residences. Officer Main testified that the area was well lit and that he was using binoculars.  When the police arrested Mabin at the Mary Day apartment shortly thereafter, he was wearing the same black tee shirt worn by the person who had held the weapon.  The police also found the tan sweatshirt worn by the person who handled the weapon hanging near the door of the apartment.  It had been raining, and the sweatshirt was wet.  [I]tems the police found in the Mary Day apartment were connected with Mabin. Moreover, once detained, Mabin told the police that he was scared and that he had just been in the area of Huron and Henderson, where the police were raiding a house.

*Mabin*, 2009 WL 3491617, at *6.

As for the possibility that the police confused Petitioner with David Harris, Officer

Main claimed that he knew Harris was not Petitioner and that he did not see Harris

engage in any criminal activity.  (Trial Tr. Vol. II, 179, May 2, 2008.)  And even though

Petitioner was discovered several blocks away from the Henderson address where the

suspect was observed handling the rifle, Officer Main testified that Petitioner could have

walked to the Mary Day address by the time the police arrived there.  (Trial Tr. Vol. I,

112, May 1, 2008.)  That the prosecution did not prove that the ammunition found at the

Mary Day apartment fit the rifle, or that Petitioner was associated with the Grand Am, is

of no substantial consequence.  The officer testified that, quite simply, he saw Petitioner

engage in criminal behavior.  The rest of Petitioner's discussion is nothing more than

quibbling about degrees of persuasiveness.  The evidence was sufficient to support

Petitioner's convictions for felon in possession of a firearm and felony firearm.

Even if this court were to conclude otherwise and question whether a rational

trier of fact could have found Petitioner guilty beyond a reasonable doubt, the court

would nonetheless defer to the state appellate court's sufficiency determination because

that determination was objectively reasonable.  For all of the reasons given above,

Petitioner has no right to relief on the basis of his challenge to the weight and to the

sufficiency of the evidence.

### F.  The Sentence

The sixth and seventh claims challenge Petitioner's sentence.

### 1.  Mitigating Evidence

Petitioner asserts that the trial court relied on inaccurate information and failed to

consider his inability to pay attorney fees for his court-appointed attorney.  He also

contends that the trial court should have completed a substance-abuse assessment to

evaluate his rehabilitative potential.  The Michigan Court of Appeals found no merit in

these claims.

There is no merit in Petitioner's argument to this court because he is entitled to

habeas corpus relief only if he is in custody in violation of federal law.  28 U.S.C. §

2254(a).  The state court's alleged misinterpretation and application of its sentencing

laws "is a matter of state concern only," *Howard v. White*, 76 F. App'x 52, 53 (6th Cir.

2003), and "federal habeas corpus relief does not lie for errors of state law," *Lewis v.*

*Jeffers*, 497 U.S. 764, 780 (1990).  Furthermore, there is no right to mitigation evidence at sentencing in noncapital cases such as this one.  *Harmelin v. Michigan*, 501 U.S. 957, 995 (1991); *Engle v. United States*, 26 F. App'x 394, 397 (6th Cir. 2001); *Hastings v. Yukins*, 194 F. Supp. 2d 659, 673 (E.D. Mich. 2002) (citing *Scrivner v. Tansy*, 68 F.3d 1234, 1240 (10th Cir. 1995)).

Even if Petitioner had stated a federal constitutional claim, the claims lack merit. In Michigan, a state trial court is not required to assess the defendant for substance abuse in order to evaluate his potential for rehabilitation.  Instead, the defendant's presentence report must include the defendant's substance abuse history.  Mich. Ct. R. 6.425(A)(1)(e).  The trial court may rely on the report unless the defendant challenges the report.  *People v. Callon*, 662 N.W.2d 501, 515 (Mich. Ct. App. 2003).

According to the Court of Appeals, Petitioner specifically denied having a substance abuse problem when he was interviewed by the person who prepared the presentence information report.  *Mabin*, 2009 WL 3491617, at *8.  And, at sentencing, Petitioner's only challenge to the report was that it did not indicate his attorney was court-appointed and that he was a second-time habitual offender.  (Sentence Tr., 3, May 20, 2008.)  Under the circumstances, the trial court did not err in declining to assess Petitioner for substance abuse.

Petitioner's claim about attorney fees lacks merit because it is premature.  He is not entitled to an assessment of his ability to pay until the order imposing court-appointed attorney fees is enforced.  *People v. Jackson,* 769 N.W.2d 630, 642-43 (Mich. 2009).

27

For all of the same reasons, the contention that the trial court relied on inaccurate information lacks merit.  Petitioner has failed to show that the trial court relied on "extensively and materially false" information, *Townsend v. Burke*, 334 U.S. 736, 741 (1948), or on "misinformation of constitutional magnitude," *United States v. Tucker*, 404 US. 443, 447 (1972).

2.  Cruel and Unusual Punishment

Petitioner's federal constitutional claim alleges that his sentence is cruel and unusual punishment because it is disproportionate to the offense.  The Michigan Court of Appeals rejected this claim because Petitioner's sentence fell within the sentencing guidelines range and was presumptively proportionate.  The Court of Appeals stated that a proportionate sentence does not constitute cruel or unusual punishment and that Petitioner had failed to overcome the presumptive proportionality of his sentences.

The Eighth Amendment to the United States Constitution prohibits "cruel and unusual punishments," U.S. Const. amend. VIII, but a plurality of the Supreme Court has stated that "the Eighth Amendment contains no proportionality guarantee." *Harmelin v. Michigan*, 501 U.S. 957, 965 (1991).  "Rather, it forbids only extreme sentences that are 'grossly disproportionate' to the crime."  *Id.* at 1001 (Kennedy, J., concurring) (quoting *Solem v. Helm,* 463 U.S. 277, 288 (1983)).  Furthermore, "a sentence within the statutory maximum set by statute generally does not constitute 'cruel and unusual punishment.'"  *United States v. Organek*, 65 F.3d 60, 62 (6th Cir. 1995) (quoting *United States v. Williams*, 15 F.3d 1356, 1364 (6th Cir.1994)).

Petitioner was twenty-nine years old at sentencing, and his criminal record included three prior felonies, one misdemeanor, and a juvenile record.  He was

28

unemployed and on parole when he committed the crimes in this case.  (Sentence Tr., 4, May 20, 2008.)

The mandatory sentence for felon in possession of a firearm is five years.  Mich. Comp. Laws § 750.224f(3).  But because Petitioner was sentenced as a habitual offender, the maximum sentence was one and one-half times the maximum sentence—seven and one-half years.  Mich. Comp. Laws § 769.10(1)(a).  Petitioner's sentence of two to seven and one-half years fell within the maximum sentence for felon in possession of a firearm.

The mandatory sentence for felony firearm is two years for the first conviction and five years if the defendant is found guilty of a second conviction for felony firearm. Mich. Comp. Laws § 750.227b(1).  Petitioner had a prior conviction for felony firearm, (Sentence Tr., 5, May 20, 2008), and, therefore, he was correctly sentenced to five years in prison for his felony firearm conviction.

Petitioner's sentences fell within the statutory maximums and were not grossly disproportionate to the offense given his criminal history and status as a repeat offender.  The court therefore finds that Petitioner's sentence does not constitute cruel and unusual punishment under the Eighth Amendment.

## IV.  CONCLUSION

The decision of the Michigan Court of Appeals was not contrary to clearly established federal law, an unreasonable application of clearly established federal law, or an unreasonable determination of the facts.  Accordingly,

IT IS ORDERED that the petition for a writ of habeas corpus [Dkt. #1] is DENIED.

29

## V.  CERTIFICATE OF APPEALABILITY

"[A] prisoner seeking postconviction relief under 28 U.S.C. § 2254 has no automatic right to appeal a district court's denial or dismissal of the petition.  Instead, [the] petitioner must first seek and obtain a [certificate of appealability.]"  *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003).

A certificate of appealability may be issued "only if the applicant has made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  A habeas petitioner must "sho[w] that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.'"  *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (quoting *Barefoot v. Estelle*, 463 U.S. 880, 893 n.4 1983)).

In this case, the state appellate judges disagreed on whether the trial court's error in rejecting Petitioner's stipulation about his prior felony convictions was harmless.  Reasonable jurists, this court concludes, could debate whether this court's resolution of that issue could be resolved differently.  Accordingly,

IT IS ORDERED that a certificate of appealability may issue on Petitioner's fourth claim regarding the trial court's rejection of his stipulation.

Reasonable jurists would not debate the court's assessment of Petitioner's other claims, and those claims do not deserve encouragement to proceed further.  Accordingly,

IT IS FURTHER ORDERED that the court declines to issue a certificate of appealability on claims one, two, three, five, six, and seven.

30

IT IS FURTHER ORDERED that Petitioner may proceed *in forma pauperis* on appeal.


s/Robert H. Cleland
ROBERT H. CLELAND
UNITED STATES DISTRICT JUDGE

Dated:  April 10, 2013

I hereby certify that a copy of the foregoing document was mailed to counsel of record on this date, April 10, 2013, by electronic and/or ordinary mail.

s/Lisa Wagner
Case Manager and Deputy Clerk
(313) 234-5522